Arthur J. MILLIRON, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health
and Human Services, Defendant.

Civ. A. No. 86–113.

United States District Court,
W.D. Pennsylvania.

Dec. 9, 1986.

Samuel S. Blaufeld, Pittsburgh, Pa., for plaintiff.

Albert W. Schollaert, Asst. U.S. Atty., Pittsburgh, Pa., for defendant.

OPINION

GERALD J. WEBER, District Judge.

This is an appeal from a decision of the Secretary denying plaintiff Social Security Disability Benefits. The parties have filed cross motions for summary judgment and there are no disputed issues of material fact.

Plaintiff is a 51 year old male, 5'10" and 185 lbs. He completed the 10th grade and has been employed in a steel mill, principally as a laborer, but for 2 years as a "speed operator." He last worked on April 26, 1984.

Plaintiff suffers from severe aortic valve disease which required open heart surgery for aortic valve replacement in May, 1984. He currently takes several medications for his heart condition, including Coumadin, and these medications are reported to be effective, although they cause some fatigue and dizziness.

The Secretary concluded that, despite his impairment, the plaintiff was capable of performing his past relevant work as a "speed operator" in the mill, and therefore was not disabled. The issue on this appeal is whether the Secretary's conclusion is based on substantial evidence.

Included in the record is a "Job Description" from J & L Steel for the position of speed operator. (Trans. at 164–167). A speed operator controls the speed and tension of the finish rolling of steel. The continuity of operation of the strip mill depends largely on the efficiency of the speed operator. Because the job principally entails operation of controls in a control stand, the position requires minimum physical exertion without exposure to the mill environment. However, the position requires close attention at all times to ensure efficient operation and to prevent damage to the product and the machinery. The operator is also required to periodically leave his control stand to assist in the changing of rolls. This operation apparent-

ly does involve some physical exertion and includes the moving and positioning of rolls and cables and the use of a sledge. Of course, during such an operation, a speed operator would be exposed to the general mill environment.

Plaintiff's physicians have stated unequivocally that he is no longer capable of engaging in any physical work and that he may no longer suffer exposure to a mill environment due to its heat and fumes. While the bulk of a speed operator's duties do not involve physical labor nor do they expose plaintiff to the mill environment, some portion of the job does. We believe that swinging a sledge is plainly within the doctors' prohibition against physical labor. Furthermore, the roll-changing process necessarily exposes plaintiff to the mill environment. In addition, plaintiff's persistent symptoms of fatigue and dizziness would seriously impair plaintiff's ability to give the job the sustained close attention required.

The ALJ failed to note these aspects of the position and failed to consider the impact of plaintiff's condition on them. We believe that the factors described above would disqualify plaintiff from his past work as a speed operator.

Our conclusion on this issue does not mandate a finding of disability. Rather, a remand is necessary to obtain an evaluation of plaintiff's residual functional capacity for work and for a determination of disability based on such capacity and other relevant factors. An appropriate order will be issued.